**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 22, 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

In re: Jay Lynn Murphy,

Debtor.

JAY LYNN MURPHY,

Appellant,

v.

DAVID MCARTHUR, as
representative limited partner for
Bison Investment Group No. One,
Ltd., and others; DOROTHEA
MCARTHUR, as representative
limited partner for Bison Investment
Group No. One, Ltd., and others,
KEVIN R. ANDERSON, Standing
Chapter 13 Trustee,

Appellees.

No. 03-4289
(D.C. No. 2:02-CV-1365-TC)
(D. Utah)

**ORDER AND JUDGMENT** [*]

Before **SEYMOUR** , **KELLY** , and **MURPHY** , Circuit Judges.

---

[*]     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument.  See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.

Debtor-appellant Jay Lynn Murphy appeals a district court order affirming a bankruptcy court order dismissing his Chapter 13 bankruptcy petition.  We exercise jurisdiction under 28 U.S.C. §§ 158(d) and 1291 and affirm.

I.

Murphy filed a voluntary petition under Chapter 13 in bankruptcy court. The Trustee [1] filed an objection and a motion to dismiss or convert Murphy's petition on the basis that his unsecured debt exceeded the jurisdictional limit established in 11 U.S.C. § 109(e).  The appellees, David and Dorothea McArthur, filed derivative proofs of claim on behalf of three California limited partnerships of which they were limited partners.  The McArthurs also moved for conversion or dismissal of Murphy's case pursuant to § 109(e) based on the amount of his unsecured debt.  Murphy objected to the derivative proofs of claim and to the Trustee's and the McArthurs's motions for dismissal or conversion.  The bankruptcy court held a trial and issued findings of fact, conclusions of law, and

---

[1] The Trustee did not enter an appearance in the district court proceedings and has not entered an appearance in these proceedings.

an order overruling Murphy's objections and dismissing his Chapter 13 case. In the order, the bankruptcy court offered two separate and alternative grounds for the dismissal: 1) that Murphy's unsecured debt surpassed the jurisdictional limit of $290,525 for noncontingent, liquidated, unsecured debt; and 2) that he failed to prosecute his Chapter 13 case in good faith.

The district court affirmed the bankruptcy court's dismissal on both grounds. On appeal, Murphy challenges both of the bankruptcy court's grounds for dismissal. Because we conclude that the bankruptcy court properly found that Murphy was ineligible to be a Chapter 13 debtor because his noncontingent, liquidated, unsecured debt exceeded the limit identified in § 109(e), we will not address the bankruptcy court's other ground for dismissal or Murphy's challenge to that dismissal. We review the bankruptcy court's legal determinations de novo and its factual findings for clear error. *Phillips v. White* (*In re White*), 25 F.3d 931, 933 (10th Cir. 1994).

## II.

Murphy is the sole shareholder, director, and officer of a corporation, Bison Inc., that serves as a General Partner for three Limited Partnerships (Bison One, Bison Opportunity, and Bison Development). The McArthurs are beneficial owners, through investment, of an interest in each of the Limited Partnerships. Murphy exercised sole and exclusive control over the Limited Partnerships'

business and financial affairs. Between Spring 1997 and Spring 1999, Murphy caused the Limited Partnerships to transfer substantial sums from the Limited Partnerships to Bison Inc. and himself. Murphy used the funds transferred to him to pay miscellaneous bills, taxes, and to finance the remodeling of his residence. Bison Inc. used the funds transferred to it to pay miscellaneous business expenses and taxes. Murphy did not disclose and concealed the transfers from the limited partners by failing to provide complete financial information in quarterly and annual financial reports which he provided.

In April 1999, after receiving demands from certain of the limited partners to provide more complete financial reports, Murphy disclosed the transfers to the limited partners. In written communications between May 1999 and October 1999, Murphy acknowledged his personal indebtedness for the transfers and pledged his personal assets to pay back everything that was owed. On August 7, 2000, Murphy, for the first time, claimed that his indebtedness to the Limited Partnerships was offset by management fees that Bison Inc. had been accruing since the inception of the Limited Partnerships but had never been paid. On June 13, 2001, Murphy filed his Chapter 13 bankruptcy petition.

III.

Murphy spends much of his brief complaining about the bankruptcy court's treatment of Bison Inc., a non-debtor corporation. Murphy, however, sought to

-4-

bring Bison into the bankruptcy proceedings because he consolidated the Limited Partnerships claims against him and Bison and asserted that the Limited Partnerships claims against *him* should be reduced and offset by the amount of unpaid management fees and costs that the Limited Partnerships owed *Bison*. Prior to filing for bankruptcy, Murphy borrowed money for himself personally ("personal debt") from the Limited Partnerships. Bison, through Murphy, also borrowed money from the Limited Partnerships ("corporate debt"). But when Murphy filed for bankruptcy, he listed the personal debt and the corporate debt as one combined claim ("combined debt"). Murphy then asserted Bison's right to set-off for management fees against the combined debt, including the portion that was Murphy's personal debt and not subject to set-off.

Murphy's first argument is that the bankruptcy court lacked subject matter jurisdiction because the McArthurs lacked standing "to seek or obtain the rulings that were essential to the result of dismissal, namely, the *alter ego* ruling that collapsed [Murphy] into [Bison] . . . and the ruling that invalidated [Bison's] assets that were earmarked for payment of the claims in question." Aplt. Br. at 30. In the bankruptcy proceedings, the Trustee filed an objection and a motion to dismiss or convert Murphy's petition on the basis that his unsecured debt exceeded the jurisdictional limit established in 11 U.S.C. § 109(e). The McArthurs also moved for conversion or dismissal of Murphy's case pursuant to

§ 109(e) based on the amount of his unsecured debt– the same relief sought by the Trustee. Although the ultimate relief sought by the McArthurs was the dismissal or conversion of Murphy's Chapter 13 petition, Murphy attempts to characterize subsidiary legal issues that arose in the dismissal proceedings as separate "avoiding actions." *See id*. Murphy then argues that these "avoiding actions" could only have been asserted by the Trustee.

Murphy's argument fails. First, the alter ego and set-off issues were not being litigated as separate actions before the bankruptcy court; rather, they arose in the context of the court's determination as to whether Murphy was eligible for Chapter 13 relief and were necessary because of Murphy's attempts to use Bison's debts and assets to avoid personal liability for amounts he owed to the Limited Partnerships. Second, and more significantly, the Trustee sought the same relief from the bankruptcy court that the McArthurs sought–the dismissal of Murphy's Chapter 13 petition. In its order, the bankruptcy court sustained the Trustee's objection and motion, and granted the McArthur's motion to dismiss. Aplt. App., Vol. II at 333-36. The Trustee and the McArthurs were therefore granted the same relief. Murphy has never challenged the Trustee's standing before the bankruptcy court, the district court or this court. Accordingly, the question of Murphy's eligibility for Chapter 13 relief was properly before the bankruptcy court.

Murphy then argues that the bankruptcy court lacked subject matter jurisdiction to adjust the assets and liabilities of Bison and lacked personal jurisdiction over Bison. Murphy brought Bison's corporate debt into the bankruptcy and then asserted Bison's right to set-off in an attempt to avoid liability for his own personal debt. Because Murphy was using Bison's right to set-off in an attempt to characterize his personal debt as secured so that he could be eligible for Chapter 13 relief, the bankruptcy court had to determine whether Murphy had standing to assert claims for Bison and whether the set-off claims were valid in order to make the Chapter 13 eligibility determination. Murphy now complains on appeal that the bankruptcy court lacked jurisdiction over Bison and therefore the dismissal order should be reversed. This argument is meritless.

At trial, Murphy introduced evidence showing that the alleged management fees and expenses owed to Bison had been assigned by Bison to the Limited Partnerships for the purpose of satisfying Murphy's indebtedness prior to Murphy's bankruptcy filing. Based on the existence of these assignments, the bankruptcy court determined that Bison had irrevocably assigned to the Limited Partnerships its rights to receive the management fees and expenses and that it had no control over the assets assigned. The court determined, however, that because the assignments were made for the benefit of satisfying claims against Murphy, Murphy had standing as an intended third-party beneficiary to enforce

the assignments. Accordingly, the bankruptcy court concluded that as to the matter of the offset of the management fees owed to Bison, that issue was properly before the court without the formal joinder of Bison based on Murphy's standing to assert those claims. The bankruptcy court did not err in this determination.

Murphy argues also that the bankruptcy court erred in its application of 11 U.S.C. § 109(e). That section states that "[o]nly an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than [$290,525.00] [2] . . . may be a debtor under chapter 13 of this title." The bankruptcy court concluded that Murphy was not eligible for Chapter 13 relief because his noncontingent, liquidated, unsecured debt exceeded $290,525. In reaching this conclusion, the bankruptcy court found that Murphy had the following noncontingent, liquidated, unsecured debt: 1) $87,102.87 that Murphy admitted to in his amended schedules; 2) $142,342.89 from unsecured claims filed in Murphy's bankruptcy owed to creditors other than the Limited Partnerships; 3) $272,608.01 that Murphy admitted owing to the Limited Partnerships on the basis of transfers made to him, as opposed to Bison

---

[2] According to the Adjustment of Dollar Amounts notes to 11 U.S.C. § 109(e), this was the amount at the time of the filing of the petition. The dollar amount has been adjusted to $307,675, but that adjustment is not applicable to cases commenced before April 1, 2004. *See* 11 U.S.C. § 109(e) (2005).

Inc. Aplt. App., Vol. II at 314-15 ¶¶ 138-140. These findings total $502,053.77, well in excess of the $290,525 limit.

Murphy does not challenge the findings listed above. Instead, he argues that the bankruptcy court erred because it concluded that Murphy was personally liable for Bison's corporate debt in determining that Murphy exceeded the § 109(e) limit, but then failed to make findings about the nature of that corporate debt, i.e., whether it was non-contingent, liquidated, and unsecured. Murphy misapprehends the bankruptcy court's ruling. In its findings of fact described above, the bankruptcy court clearly identifies all of the debt that it is considering for the purposes of determining Murphy's § 109(e) eligibility. There is no mention of Bison's corporate debt in those findings. Rather, the court emphasized that it was counting Murphy's personal debt from the money he transferred to himself, "as opposed to Bison Inc." *Id.* at 315 ¶ 140. Moreover, the amount identified in that paragraph–$272,608.01–is consistent with the court's accounting that separated out Bison's corporate debt and Murphy's personal debt. That accounting reflects that Murphy's personal debt, established from his testimony, was $272,608.01 (including interest) and that Bison's corporate debt was $149,740.52 (including interest). *See id.* at 294-95 ¶ 17.

Murphy also argues that the bankruptcy court erred in its consideration of Murphy's claim that his debt to the Limited Partnerships should be set-off by fees

owed to Bison. Murphy argues that the assertion of a set-off right creates a secured claim and that therefore at the time he filed his petition he did not exceed the § 109(e) jurisdictional amount. While the right to a set-off does create a secured claim, after Murphy filed his petition, both the Trustee and the McArthurs made good faith objections to Murphy's Chapter 13 eligibility. At that point, it was proper for the bankruptcy court to look past the characterization of Murphy's claims in his schedules and consider other evidence. *See, e.g.*, *Quintana v. Internal Revenue Service (In re Quintana)*, 107 B.R. 234, 238 n.6 (B.A.P. 9th Cir. 1989) ("If the debtors' schedules were dispositive, then eligibility could be created by improper or incomplete scheduling of creditors. A bankruptcy court should look past the schedules to other evidence submitted when a good faith objection to the debtor's eligibility has been brought by a party in interest." (quotation omitted)). At the hearing on eligibility, the parties submitted evidence and had experts testify regarding Murphy's set-off claim. Aplt. App., Vol. II at 308-09 ¶¶ 88-94. The bankruptcy court then determined that Murphy was not entitled to any set-off. *Id.* at 324 ¶ 32. Murphy has not challenged the bankruptcy court's merits determination that he was not entitled to a set-off. Accordingly, we conclude that the bankruptcy court properly found that Murphy's noncontingent, liquidated, unsecured debt exceeded the § 109(e) limit of $290,525 and that he therefore was not entitled to Chapter 13 relief.

-10-

Finally, Murphy argues that the bankruptcy court erred on the merits of its ruling that Murphy and Bison were alter egos. We do not need to reach this issue because it is not necessary to the determination that Murphy is ineligible for Chapter 13 relief. As discussed above, the bankruptcy court's findings separated out Murphy's personal debt and used that debt in its findings for Chapter 13 eligibility. The bankruptcy court's conclusion that Murphy was Bison's alter ego and therefore personally liable for Bison's corporate debt does not alter Murphy's eligibility for Chapter 13 relief. Accordingly, the judgment of the United States District Court for Utah is AFFIRMED.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge